UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN W.,<br><br>               Plaintiff,<br><br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 3:23-cv-05844-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB") under Title II. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 14. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 3, Complaint.

      On July 2, 2021 plaintiff filed an application for DIB alleging a disability onset date of August 8, 2014. AR 233-41. Plaintiff updated the onset date to May 17, 2017. AR 326. Plaintiff's date last insured was December 31, 2019. AR 21. Plaintiff's application was denied initially and upon reconsideration. AR 148, 155. On January 31, 2023 a hearing was conducted by Administrative Law Judge ("ALJ") Lawrence Lee. AR 87-121. On February 16, 2023 ALJ issued an unfavorable decision, finding plaintiff not to be disabled. AR 18-32. On August 23, 2023 the Appeals Counsel denied review.

ALJ Lee found plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the spine status post cervical fusion; lumbar spondylolisthesis; status post laminectomy and fusion; carpal tunnel syndrome; total right hip replacement; and obesity. AR 21.  As a result, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> except the claimant can frequently reach overhead bilaterally. The claimant can never climb ladders, ropes, and scaffolds. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can occasionally work at unprotected heights and with moving mechanical parts. The claimant requires a sit/stand option every forty-five minutes for five to ten minutes.

AR 24. The ALJ found plaintiff could perform past relevant work as a telephone solicitor (DOT 299.357-014). AR 29-30. The ALJ made alternative findings for step five that in addition to past relevant work, plaintiff could also perform the requirements of representative occupations such as: Mail Sorter/Routing Clerk (222.687-022), Production Assembler (706.687-010), and Parking Lot Cashier (211.462-010). AR 30-31.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v.*

*Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. . . ." *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

DISCUSSION

**1. Plaintiff's statements regarding subjective symptoms**

Plaintiff challenges the ALJ's assessment of his testimony, arguing that the ALJ failed to provide specific, clear or convincing reasons for discrediting his testimony. Dkt. 8 at 3-12.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Inconsistency with the RFC assessment is not a clear and convincing reason for the ALJ to discount plaintiff's testimony. *Laborin v. Berryhill,* 867 F.3d 1151, 1153-1154 (9th Cir. 2017).

On October 20, 2021 plaintiff completed a "Function Report – Adult" form. AR 281-88. Plaintiff stated that his conditions limit him from standing/sitting/walking for long periods, prevent him from lifting more than 5-10 pounds, and restrict him from frequent reaching. AR 281. He stated that his activities, including watching tv, working on a computer, cooking, and cleaning, are done in short intervals. AR 282. He wrote that all housework causes pain and he does no yardwork. AR 283. He stated he can walk approximately 100 yards before he needs to stop and rest. AR 286.

At the hearing held by the ALJ on January 31, 2023, plaintiff testified that pain would occur if he was in one position or doing a particular activity such as standing, walking or sitting, he would get pain in the lower back and legs, similar to feeling of being on fire "with bugs crawling on it and bees stinging it"; if he used the stairs he experienced muscle spasms in his low back and sciatic pain down the leg to his calf. AR 99, 101. He stated that on the right side "it just went down to [his] thigh and [his] feet felt like they were on fire." AR 101. H stated that he had a headache all the time, ranging from two to nine on a scale of ten. AR 107. It would be very severe headache pain about once per month, and he would need to lay quiet, but the lower pain level was constant. AR 107-108. This was from a neck condition that he had surgery to address; even after the surgery he requires stretching, injections on the nerve trunks, and narcotic pain medication. AR 108.

Plaintiff stated that, on average, the pain in his back and down his leg was at a four to five, but if he was active and his condition was exacerbated, the pain would become a seven or eight on a scale of ten. AR 104. He stated that he had severe stabbing pain in his ribs where it even hurts him to breathe. AR 106. The only thing that

would alleviate pain is "if [he] took enough narcotic pain medications." AR 105. He testified he experiences a burning sensation in his feet, "like when you run a bath and you get it really hot and it's just almost too hot. That's what my toes feel like kind of all the time." AR 105.

He also testified that he would take care of household duties as needed, he would mow the lawn a bit, rest a bit, taking his time so he didn't get hurt. AR 92. He testified that some cleaning chores were very difficult for him to accomplish, such as unloading the dishwasher or vacuuming – plaintiff stated, "if I did that I was done for a day or two". AR 93. Plaintiff stated that his sister-in-law and brother-in-law moved in after his wife passed away, and they helped manage the house and do most of the shopping. AR 109. He testified that, before his wife passed away,[1] sometimes he and his wife would go out for dinner or drive to the ocean and watch sunsets on the beach together – their home was about a half mile from the ocean beaches. AR 94, 109.

He testified that he could usually stay in a seated position for somewhere between thirty minutes and an hour before he had to get up and move around for around fifteen to thirty minutes. AR 97-98. He testified that he could stand for no more than five to ten minutes. AR 98. He could walk less than quarter of a mile and needed a walking stick to do so. AR 98-99.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however he found plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence in the record.

---

[1] The record indicates that plaintiff's spouse passed away in September 2022. AR 44.

AR 29. The ALJ also found the plaintiff's statements were out of line with the RFC. AR 26.

    A.  <u>Activities of Daily Living</u>

Regarding plaintiff's activities of daily living, the ALJ stated that "[d]espite such allegations of disabling symptoms and limitations, the claimant could travel outside of his home independently, tend to his personal care needs, vacuum, unload the dishwasher, prepare simple meals, shop in stores, go out to dinner, manage his finances, read, use the computer, watch television, and drive." AR 25. As a result, the ALJ concluded, "the claimant engaged in activities that were not limited to the extent one would expect, given his complaints of disabling symptoms and limitation." *Id*.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But here, there is no "reasonable inference that such an inconsistency exists." *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024).

No evidence suggested plaintiff's activities during the relevant period, between the date of onset (5-17-2017) and the date last insured (12-31-2019) involved prolonged sitting, standing, walking, or reaching. Furthermore, plaintiff's testimony regarding his limited ability to do these activities is consistent with his testimony regarding his disabling symptoms and limitations. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and with significant assistance, care for one's daughter,

all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day is consistent with the pain that Garrison described in her testimony.")

Therefore this was not a clear and convincing reason for rejecting plaintiff's testimony.

B. <u>Comparing Plaintiff's Testimony About Symptoms and Limitations with Medical Evidence and the RFC</u>

The ALJ concluded "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional capacity." AR 26.

The Ninth Circuit has held that "[u]ltimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Providing a summary of medical evidence...is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (emphasis in original).

In this case, the ALJ cited evidence regarding plaintiff's degenerative disc disease of the spine post cervical fusion, lumbar spondylolisthesis status post laminectomy and fusion, and carpal tunnel syndrome. AR 26. The ALJ then cited evidence in the record that the ALJ apparently identified as being inconsistent with plaintiff's testimony about the impact of plaintiff's conditions. *Id*. The ALJ cited an electromyography and nerve conduction study which showed plaintiff's carpal tunnel was mild and there was no active denervation. *Id*. (citing AR 640, 643).

The ALJ cited physical examinations that plaintiff ambulated with a stable and normal gait. *Id*. (citing AR 554, 759). He was not in acute distress. *Id*. (citing AR 565, 571, 584). Plaintiff had normal range of motion of the lumbar and cervical spine. AR 27 (citing AR 833). There was no deformity or scoliosis of the thoracic or lumbar spine and no tenderness to palpitation of the lumbar, thoracic, or cervical spine. *Id*. (citing AR 565, 833). He had no focal deficits. *Id*. (citing AR 565, 571, 584, 833). There was no clubbing, cyanosis edema, or deformity with normal full range of motion of all joints. *Id*. (citing AR 565, 571, 584, 833). Pulses were normal in all four extremities. *Id*. (citing AR 565, 571, 584). The diagnostic images of plaintiff's lumbar spine from October 2018 showed plaintiff had neutral alignment and normal lordosis with no acute fractures. *Id*. (citing AR 838). Plaintiff said he could manage lifting light to medium weights and most of his personal care. *Id*. (citing AR 832). He reported after his carpal tunnel release procedure his upper extremity pain improved. *Id*. (citing AR 769).

The ALJ similarly cited evidence regarding plaintiff's total right hip replacement. AR 27. The ALJ then cited evidence that apparently the ALJ identified as inconsistent with the plaintiff's description of symptoms and limitations of this condition. *Id*. Physical examination after hip surgery showed plaintiff had adequate strength and range of motion. *Id*. (citing AR 793). Plaintiff had a normal gait. *Id*. (citing AR 759).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."

1    *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639,
2    641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).
3    Treatment records cannot be cherry-picked; the ALJ must consider a particular record
4    of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.
5           Here the ALJ provides a summary of medical records but does not explain how
6    the cited portions of the record contradict any of plaintiff's allegations regarding
7    symptoms or work-related limitations, or how plaintiff's allegations of symptoms and
8    limitations are inconsistent with medical information about his symptoms and limitations
9    between the date of onset (5-17-2017) and the date last insured (12-31-2019). AR 26-
10   27. The points the ALJ highlights are not necessarily contradictory to plaintiff's
11   testimony with regard to the symptoms and work-related limitations caused by his
12   conditions. For example, medical records show severe deformity of the lumbar spine.
13   AR 731 (evaluation in July 2021 describes "X-rays of the lumbar spine taken 8/6/20
14   show slightly increased listhesis at L3-L4, moderate arthritis, but overall no major
15   changes compared to previous x-rays taken 7/9/18. MRI of the lumbar spine taken
16   8/24/20 show severe neural foraminal narrowing at L4-L5 and L5-L6. His pain follows an
17   L4 dermatome on the right and L5 on the left."), AR 746 (Notes from Dr. Taylor in June
18   2020, indicating long-term opiate prescriptions to manage pain).
19          In addition, the ALJ erred by finding that plaintiff's testimony about symptoms and
20   limitations was less than credible simply because it was different than the RFC the ALJ
21   formulated. *Laborin v. Berryhill,* 867 F.3d 1151, 1153-1154 (9th Cir. 2017).

Therefore the ALJ's finding of an inconsistency is unsupported by reasoning, and was error under *Laborin v. Berryhill*. This was legal error because the ALJ failed to give a clear and convincing reason for rejecting plaintiff's testimony.

### C. Harmless Error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

During the hearing, the Vocational Expert ("VE") testified that an individual with plaintiff's RFC who needed three extra fifteen minute breaks a day, for forty five minutes total, would be precluded from all competitive employment. AR 113. The RFC did not include this limitation. Had the ALJ discussed the reasoning about comparing plaintiff's statements about symptoms and limitations, with relevant information from the medical record, the RFC may have been modified to include different and more restrictive limitations. Therefore, the error was not harmless.

### 2. Side Effects of Medications

Plaintiff challenges the ALJ's failure to include any cognitive limitations related to his prescribed pain medication. Dkt. 8 at 13. Defendant responds that plaintiff does not cite any evidence besides his own testimony that his medication caused side effects. Dkt. 12 at 9.

10

If the ALJ does not accept the plaintiff's testimony about side-effects of medication, the ALJ is required to support the decision with specific findings. *Varney v. Secretary of Health & Human Services,* 846 F.2d 581, 585-586 (9th Cir. 1988). This is because medication side-effects may significantly impact an individual's ability to function at work; therefore the plaintiff's testimony about limiting effects of medication "should not be trivialized." *Id.* Social Security regulations require an ALJ to consider side effects of medication taken for pain or other symptoms when assessing allegations of disabling symptoms. 20 C.F.R. § 416.929(c)(3)(iv).

Plaintiff testified that he experiences drowsiness and "it feels like my head is kind of fuzzy" when taking his medications, which causes issues with comprehension and concentration. AR 108.

The ALJ did not include this limitation. The ALJ noted that "[a]ccording to the claimant, to treat his conditions he was prescribed medications; however, the claimant said the medications caused side effects including difficulty comprehending and concentrating." AR 25. The ALJ neither rejected nor discounted the plaintiff's testimony about his experience of side-effects, nor did the ALJ assess whether or to what extent such side-effects would be a work-related limitation; no medication side-effect limitation was included in the RFC.

The record shows plaintiff was prescribed medication for muscle spasms (AR 502, 553, 567), and pain-relieving medications (AR 45, 499-500, 502-503, 553, 566-567, 569 (notation of physician, during office visits with Dr. Sensiba, in May 2018, that plaintiff had been referred to a pain management specialist and had long term and current use of opiate analgesic hydrocodone, prescribed for back pain)).

The ALJ erred in failing to either give credit to plaintiff's statements about side effects of plaintiff's medication or to discount the statements and "make specific findings regarding such evidence." *Id*. at 586. Additionally, the error was not harmless; if the ALJ had provided reasoning and evidence about whether plaintiff experienced these side effects when considering the functional area of concentrating, persisting, or maintaining pace, the RFC may have been different. *See* AR 23; *See also Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006))

## D. Whether the Court should reverse with a direction to award benefits.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. Dkt. 8 at 14-16. The Court has found several errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations.

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits. *See id.*

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the Commissioner is required to allow plaintiff a de novo hearing and the opportunity to present additional evidence.

After the de novo hearing, the Commissioner shall review the medical evidence and the plaintiff's statements about symptoms, medication side-effects, and work-related limitations. If the ALJ determines that plaintiff's statements about symptoms, any medication side-effects, and work-related limitations associated with symptoms and side- effects should be rejected or discounted, the ALJ is required in the five-step analysis to provide reasoning that sufficiently connects findings about specific statements of plaintiff with the relevant evidence.

Dated this 21st day of June, 2024.

Theresa L. Fricke
United States Magistrate Judge